UNITED STATE OF AMERICA
DISTRICT OF MASSACHUSETTS

DOCKET NO. 03-10406-RCL

UNITED STATES OF AMERICA

vs.

DEFENDANT'S MOTION FOR
DOWNWARD DEPARTURE

DAVID M. SMITH

## INTRODUCTION

Now comes the defendant, by counsel, who moves this Honorable Court to grant a downward departure from the Presentence Report's Guideline calculation of 10 points by striking the four point increment added pursuant to §2B1.1(b)(2)(B). This motion relies in part upon the information contained within the Presentence Report and its Addendum.

Any resultant downward departure here would be consistent with the parties' Plea Agreement's calculation total of 6 points as the basic offense level, without the 4 point enhancement suggested by probation. And the request for this departure is consistent with the defendant's representation that he would not seek a downward departure from the parties' calculations contained in their Agreement.

The defendant contends that, given the unusual facts of this case, certain aspects fall outside the heartland of cases in the guideline and specifically with regard to the 4 point enhancement here in question, see §5K2.0 and §5K2.0 *commentary*, paragraph 1

1

## ARGUMENT

The Presentence Report adds 4 points pursuant to §2B1.1(b)(2)(B) as amplified by Application Note 3A ii(I) or, alternatively, Notes 3B i (II) and 3B ii (IV). Both the victim definitions and presumptions contained in Note 3 are certainly applicable to the usual and ordinary cases of stolen and intrinsically valuable undelivered mail. The "50 or more victims" provision adds a "victim and mass-marketing enhancement." However, in the area of "marriage mail" these definitions and presumptions do not make sense, analytically, and as they raise a concern as to fairness, this is the reason for this requested downward departure.

The Advo cards are part of the "marriage mail" package and, since such a package consists of two parts, it would not appear to be a concept contemplated within the guidelines. The card is intrinsically worthless; its only function is to provide postage and an impersonal "addressee" address to the accompanying flyer, which is the valuable part of the mailing. Here, the flyer portion of the marriage mail *was delivered* by the defendant; the Advo card was not. Thus, part of the mailing was indeed delivered to the intended recipient and this was the part having value.

Value and loss are factors relevant to Downward Departure considerations, pursuant to §2B1.1, Application Note 15(B) *background*, paragraph 3: "The Commission has determined that, ordinarily, the sentence of defendants convicted of federal crimes should reflect the nature and magnitude of the loss caused or intended by their crimes." Indeed, §2B1.1 Application Note 2(A) defines terms to be applied in sentencing: "actual loss," "intended loss," "pecuniary loss," and "reasonably foreseeable pecuniary harm."

There was no financial loss here whatsoever to the residents of postal route #17 due to the failure to receive Advo cards. The cards at no time were intended to convey personal or particularized information of value to any [unnamed] recipient. It was intended that the flyers would advertise specials at local markets and attract in the flyers' recipients to shop at these markets each weekend. Since the flyers were delivered, the

2

residents of route #17, the stores and Advo suffered no loss. The only loss to Advo was the nominal loss of the card's language imploring recipients to contact their local postmaster if the flyer was not delivered. Since the flyers were delivered, there was no harm nor any loss contemplated within the guidelines. Indeed, the mass-marketing that Advo intended to accomplish was accomplished.

The guideline's definition of "50 or more victims" at §2B1.1 Application Note §3(B) ii is a pernicious misuse of the term "victim" in this case. Logically, a victim must suffer a loss. Since there was no financial loss to the residents of route #17, it is impossible to identify or to argue that there exists 50 or more victims from this group. Yet the guidelines require a ridged presumption that there exists 50 or more victims so that the enhancement takes place, a presumption that completely lacks a factual basis here. Thus, the residents of route #17 were not "victims" as defined at Application Note 3(A) ii (sustained part of actual loss) nor as defined at Application Note 3(B) i (II) as (intended addressees of undelivered mail) as the valuable portion of the marriage mail was delivered.

In addition, it is hard to envision "50 or more victims" given that the Presentence Report itself, at paragraph 25, posits that there is "... no identifiable victim in this instance ...."

There is no question that some portion of the U.S. mail, the Advo cards, did not get delivered but the other portion of the mailing, the flyer, did get delivered. As such, there was a partial performance by the defendant but without the intent to cause harm or injure his route's residents or Advo in any measurable way. His motivation was the avoidance of harassment by supervisors for "going over" on Fridays and Saturdays, not in enriching himself or defrauding others. Some of each "marriage mailing" was delivered and that is the marriage mail dichotomy; it does not excuse the failure to deliver the card portion but by enhancing the specific offense characteristic by 4 points overstates the seriousness of what occurred here, given the factors that have been argued, above.

3

Also, it should be remembered that the post office received no complaints from the 2, 231 residents of route #17 that any one of them had failed to receive an Advo card from the cards which the defendant discarded between February 11, 2002 and March 11, 2002. And there were no complaints during the 15 months that the defendant worked route #17 about the failure to receive Advo flyers through the mail.

## CONCLUSION

To determine whether a downward departure is appropriate, the Court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day to day experience in criminal sentencing. §5K2.00, *commentary*. Here, there are several factual questions which argue to mitigate the guideline's presumptions, which overstate the seriousness of the crime committed here. The absence of harm, actual or intended, and the absence of objective, known victims are certainly mitigating circumstances which were not contemplated by the Sentencing Commission. In addition, the defendant here lost his job at the post office and incurred a criminal prosecution for his actions.

Upon the basis of the above, the defendant hereby moves this Court to strike the 4 point enhancement provided for by §2B1.1 (b)(2)(B) and to allow his Motion for a Downward Departure from the probation calculation.

Respectfully submitted,
David M. Smith,
By his attorney,

_____
F. Robert Houlihan
Heavey, Houlihan, Kraft & Cardinal
229 Harvard Street
Brookline, MA 02446
(617) 277-3477
B.B.O. # 241260

Dated: 6-11-04

4

## CERTIFICATE OF SERVICE

I, F. Robert Houlihan, certify that a copy of the foregoing document has been served upon A.U.S.A. Donald Cabell and Denise Rivera, U.S. Probation Office, by mailing them a copy of same by first class mail, postage pre-paid on June 11, 2004.

        Donald Cabell, A.U.S.A.
        U.S. Attorney's Office
        U.S. District Court
        1 Courthouse Way, Suite 9200
        Boston, MA 02210

And

        Denise Rivera, U.S. Probation Officer
        Probation Office
        U.S. District Court
        1 Courthouse Way
        Suite 1200
        Boston, MA 02210

                                    _/s/ F. Robert Houlihan_
                                    F. Robert Houlihan